UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOFFRE M. MATTERA,

                         Plaintiff,

         -against-

JP MORGAN CHASE CORP. and
JOHN F. O'NEILL, JR., in his Official
and Individual Capacities Pursuant to
NYEL Section 290 et seq.,

                       Defendants.

08 Civ. 04040 (RJH)

**MEMORANDUM OPINION
AND ORDER**

Richard J. Holwell, District Judge:

      Before the Court is defendants JPMorgan Chase Bank and John F. O'Neill's

motion for summary judgment **[20]** on plaintiff Joffre M. Mattera's claim that defendants

discriminated against him and terminated his employment based on his age, and also in

retaliation for complaining of defendants' allegedly discriminatory actions, in violation of

the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. ("ADEA"), Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq*. ("Title VII"),[1] and the

New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*. ("NYHRL").

Plaintiff held various positions at JPMorgan Chase and its predecessor entities ("JPMC")

from 1985 through September of 2006 when he was fired.  Plaintiff was sixty-one years

old at the time and was replaced by an experienced forty-nine-year-old man.  Plaintiff

claims he was subjected to ongoing disparate treatment eventually concluding in his

---

[1] Plaintiff brings his retaliation claim under Title VII, 42 U.S.C. § 2000e-3(a).  Because plaintiff is does not claim to be in any class protected by Title VII (those being race, color, religion, sex, and national origin, 42 U.S.C. § 2000e-2(m)), but instead alleges age discrimination, the Court will proceed as if plaintiff had brought his claim of retaliation under the ADEA, 29 U.S.C. § 623(d).

termination because of his age, and that he was terminated in retaliation for complaining of that discrimination.  Defendants respond that plaintiff was fired due to performance deficiencies.  Defendants bring this motion for summary judgment on the grounds that plaintiff can neither make out a prima facie case for discrimination or retaliation, nor rebut as pretext defendants' legitimate nondiscriminatory reasons for their actions.  While plaintiff has established a prima facie case of discrimination, no reasonable jury could conclude from the facts, viewed in the light most favorable to plaintiff, that age discrimination was the "but-for" cause of plaintiff's termination.  Therefore, defendants' motion for summary judgment as it applies to plaintiff's claim of discrimination is GRANTED.  Moreover, because plaintiff's complaints of discrimination were not causally connected to his termination, defendants' motion as it applies to plaintiff's claim of retaliation is GRANTED.

## I.  FACTUAL SETTING

The following facts, documented by evidence and viewed in the light most favorable to the plaintiff, are relevant to this opinion.

## A.  Background

JPMC hired Joffre M. Mattera ("Mattera"), born November 23, 1944, for its finance department in 1985.  (Pl.'s 56.1 Statement ¶¶ 1-2.)  In 1986, plaintiff was transferred to JMPC's Customer Billing System, and then to Financial Management in 1987 where his positions were Senior Financial Management and Second Vice President.  (*Id*. ¶¶ 3, 5.)  Plaintiff remembers his performance evaluations during this period to have

been very good because of the success of the management billing system.  (*Id*. ¶ 6;
Mattera Dep. 37.)  In 1993, plaintiff was transferred to Card Member Services, and from
1996 through July of 2004 held the position of Vice President, Senior Financial Analyst
in that department.  (Pl.'s 56.1 Statement ¶¶ 7-8.)  In late summer 2004, plaintiff was
hired in to JPMC's Treasury Services Department, where he worked until his termination
on September 25, 2006.  (*Id*. ¶¶ 9, 97.)  His responsibilities included managing two staff
members; explaining forecasting, budgeting, and accounting processes and policies to
managers and other staff; and developing a system to track market expenses.  (*Id*. ¶ 26.)
Plaintiff's salary was $115,800 in 2004 and $119,700 in 2005. (*Id*. ¶¶ 19-20.)  He
received a $15,000 bonus for 2004 and a $10,000 bonus for 2005. (*Id*. ¶¶ 22-23.)

Plaintiff's original supervisor in Treasury Services, from late summer 2004
through March 2005 was Hong Patterson.  (*Id*. ¶ 10.)  In April 2005 defendant John F.
O'Neill, Vice President, Plan Reporting Analyst, and CFO of Financial Groups at JPMC,
became plaintiff's immediate manager and direct supervisor. (*Id*. ¶¶ 13, 15-16.)  O'Neill
had the authority to fire employees, so long as he exercised that authority within
company policy. (*Id*. ¶ 17; O'Neill Dep. 17-18.)  That policy included collecting regular
feedback, using biannual performance evaluations to set and measure specific objectives,
and rating employees based on predetermined evaluation criteria.  (O'Neill Dep. 18.)


**B.  Acts of Disparate Treatment**

Plaintiff claims that during the period between O'Neill becoming his supervisor in
April 2005 and his termination in September 2006, O'Neill subjected plaintiff to ongoing
discriminatory treatment.  For the most part, however, plaintiff's claims involve being

"singled out for something" (but not knowing exactly what), and being "treated differently" by O'Neill in work and social settings.  (Mattera Dep. at 55, 64.)

Plaintiff claims several themes of disparate treatment.  Plaintiff claims he was not allowed to converse with other employees nor were other employees allowed to converse with him.  (*Id*. at 64.)  He claims when people walked by his desk they "would not even acknowledge my presence," and that he was "kept isolated from the group."  (*Id*.) Plaintiff claims O'Neill spoke to him in a different tone of voice than he spoke to other employees, did not engage him in office "chatter," did not say "good morning" to him, would not go to lunch with him, and that this made plaintiff feel "removed … not feel part of a team, not feel part of a group."  (*Id*. at 70.)  He claims that other employees engaged in social talk about sports, but never included him.  (*Id*.)  He claims that this isolation was because O'Neill wanted to harass and discriminate against him because of his age in order to terminate him, and "could not see any other reason" why he would have been so isolated.  (*Id*. at 78, 85.)  Plaintiff's "feeling [was JPMC] wanted a younger-looking group in this bank."  (*Id*. at 122.)

Plaintiff also points to more specific instances of disparate treatment.  O'Neill required plaintiff to meet one-on-one with him every Monday.  (*Id*. at 71.)  During these meetings O'Neill took extensive notes.  (*Id*.)  O'Neill met one-on-one with all employees he supervised, but not with the same frequency as with plaintiff.  (*Id*.; O'Neill Dep. at 27.)  Plaintiff claims that when other employees left JPMC O'Neill would assign their duties only to plaintiff instead of divvying those duties up among all the employees, and that those duties were of a clerical nature normally given to less experienced employees. (Mattera Dep. at 74.)  No particulars are proffered, however, as to this allegedly disparate

treatment.  Plaintiff also claims O'Neill prevented plaintiff from explaining his alleged

performance failings (discussed below).  When plaintiff would try to offer explanations,

O'Neill would raise "his arm straight out, take his hand open it up and put it into my

face."  (*Id*. at 82.)  Furthermore, plaintiff claims that when he spoke in meetings, O'Neill

would "talk down to me like, what a dumb way to do it."  (*Id*. at 86.)  Plaintiff claims a

coworker told him he should just stop talking in meetings because "[a]ll [O'Neill] will do

is put you down."  (*Id*. at 87.) [2]


### C.  Comments and Conduct Relating to Age

Plaintiff presents no evidence that anyone within JPMC ever discussed or made

any comments relating to plaintiff's age.  (*Id*. at 65, 68.)  Nor did any supervisor or co-

worker ever engage in any sort of conduct regarding the fact that plaintiff was an older

person.  (*Id*. at 65.)  Thus, plaintiff's evidence that age discrimination was the reason for

his termination is, *in toto*, a generalized claim of disparate treatment, the fact that his

replacement was younger, his inability to see any reason other than age for his

termination, and his belief, supported by no evidence documentary or otherwise, that

---

[2] Plaintiff also offers generalized and inadmissible hearsay statements to the effect that former managers expressed disbelief upon hearing of his termination and that other employees were surprised at how O'Neill treated him.  (Mattera Dep. at 54, 72, 87.)  However, though plaintiff offers numerous emails, depositions, and reports as exhibits, there is not a single piece of documentary evidence to support these assertions. Although in ruling on a motion for summary judgment a court must "assess the evidence in the light most favorable to the non-moving party, resolve all ambiguities, and draw all reasonable inferences in its favor, … the non-moving party cannot rely on mere allegations, denials, conjectures, or conclusory statements, but must present affirmative and specific evidence."  *F.T.C. v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283, 300-301 (S.D.N.Y. 2008) (internal quotation marks omitted).  "While a court must interpret all evidence in favor of the [non-moving party], it need not blindly accept [that party's evidence] where that [evidence] is largely unsubstantiated and is contradictory or incomplete."  *Alam v. HSBC Bank USA*, 2009 WL 3096293, at *11 (S.D.N.Y. Sept. 28, 2009).  Indeed, a court will not entertain inadmissible hearsay unsubstantiated by any other evidence in ruling on a summary judgment motion.  *See H. Sand & Co. v. Airtemp Corp*., 934 F.2d 450, 454-55 (2d Cir. 1991).  Because plaintiff here offers nothing more than his statement that former managers were surprised by his firing, i.e. offers no evidence that former managers were in fact surprised, the Court declines to accept that statement as undisputed fact.

JPMC wanted a "younger-looking" bank.  (*See Id*. at 71, 78, 85, 122; Pl.'s 56.1 statement ¶¶ 101-102.)

**D.  Performance Evaluations**

During this same period, O'Neill prepared plaintiff's 2005 Performance Appraisal ("2005 Report"), taking in to account that whole year; plaintiff's 2006 Midyear Performance Appraisal ("2006 Report"); and plaintiff's June 2006 Final Written Warning (the "Warning").  (Def.'s 56.1 Statement ¶¶ 6, 12; Pl.'s 56.1 Statement ¶ 59.)  All of these reports highlight numerous performance deficiencies, largely not refuted by plaintiff.

The 2005 Report contained midyear and year-end "objectives," short- and long-term "development needs" and due dates, performance summary positives and negatives, and general "manager comments."  (Blecher Decl. Ex. G.)  Plaintiff's "objectives" mostly included specific technical goals, but also directed plaintiff to develop closer relationships across Treasury Services, provide guidance to business managers, and continue to gain a better understanding of the business.  (*Id*.)  Plaintiff's short-term development needs included coordinating deliverables better with business managers, and long term-needs included further technology and forecast systems skills training.  (*Id*.) Performance positives included that plaintiff was a team player and got along well with coworkers, was good at providing detailed analyses, and was willing to help others.  (*Id*.) Negatives included not providing management caliber leadership, not making progress in forecast accuracy, submitting inaccurate and untimely reports that had required revision or intervention, and an inability to coordinate multiple activities.  (*Id*.)

At year's end, the positives no longer stated that plaintiff provided detailed analyses, but did state that plaintiff was "knowledgeable about finance terms."  (*Id.*) Negatives included that plaintiff neither provided any insight into nor developed new methods for improving forecast accuracy, that plaintiff spent three extra months completing a project after O'Neill was informed it had been completed, that plaintiff failed to process certain important data after being reminded numerous times, and that he continued to have poor skills in organization, coordination, and technical matters.  (*Id.*) Moreover, O'Neill noted that plaintiff's performance had dropped in the past half year, that he had been making careless mistakes, that it took plaintiff over two months to complete tasks O'Neill completed in two weeks, that plaintiff had failed to perform simple and straightforward instructions two months after they had been given, that plaintiff failed to see certain risks, that plaintiff could not handle multiple assignments without his performance suffering, that he barely met deadlines, that he was unable to grasp new productivity tools, that he refused O'Neill's assistance when it was offered, and that O'Neill was forced to shift some of plaintiff's work to a coworker to ensure plaintiff met his future deadlines.  (*Id.*).  O'Neill concluded that plaintiff needed to make significant improvements in effort, execution, and efficiency in the next year, and to re-establish a "normal" workload; plaintiff's comments in the report included, "Thank [sic] for your help and guidance."  (*Id.*)

On June 26, 2006, plaintiff received a Final Written Warning, signed by both O'Neill and Human Resources Representative Robin Yudkoff.  (Blecher Decl. Ex. H.) The Warning informed plaintiff that he had failed to meet certain previously-implemented objectives, including failure to make progress in forecast accuracy, failure

to improve understanding or the efficiency of reporting processes, failure to perform certain specifically directed tasks, and failure to take training classes that would assist in remedying these problems. (*Id*.) The Warning concluded that plaintiff "has been unable to accept his share of the departments [sic] workload," directed plaintiff to complete his objectives and re-establish an acceptable workload within 30 to 60 days, and informed plaintiff that if improvement by that time was not satisfactory then a recommendation for termination would follow. (*Id*.) The Warning's "restriction period" ended on August 25, 2006. (*Id*.) Plaintiff signed, acknowledged, and understood the implications of the Warning. (*Id*.; Mattera Dep. at 100.)

Plaintiff's next performance appraisal, also prepared by O'Neill, was issued for mid-year 2006, after plaintiff had received the Warning. (O'Neill Dep. 40.) Many of plaintiff's objectives directed him towards the same goals as those in the 2005 Report, with further orders to improve accuracy and understanding, and to provide better guidance. (Blecher Decl. Ex. I.) Plaintiff's positives included, in full, a "team first attitude," working well with his peers, and a pleasant disposition. (*Id*.) His negatives included failures of progress in forecast accuracy and understanding of reporting processes, a failure to take advantage of training classes, and a subpar level of execution. (*Id*.) The 2006 Report concludes, "Jeff was given his final written warning on June 26th with specific objectives to be reached within 30-60 days. Jeff is still working on completing the objectives." (*Id*.)

**E.  Responses to Performance Evaluations and Complaints of Discrimination**

Plaintiff's responses to the 2005 and 2006 Reports and to the Warning were limited.  Plaintiff testified that he did not challenge the 2005 Report because he felt too intimidated by O'Neill.  (Mattera Dep. at 82.)  After receiving the Warning in June 2006, plaintiff did speak with Mike Moran, O'Neill's direct supervisor  (*Id*. at 91; O'Neill Dep. at 19.)  Plaintiff informed Moran that plaintiff could resolve the issues stated in the Warning, and Moran directed plaintiff to document how he would resolve those issues. (Mattera Dep. at 91.)  Plaintiff also spoke with Treasury Services marketing group staff in order to implement further forecasting processes, and obtain certain marketing information, but those suggestions and requests were denied.  (*Id*. at 92-95; Blecher Decl. Ex. J; Pl.'s 56.1 Statement ¶¶ 60-61.)[3]

Plaintiff also met with Yudkoff and O'Neill concerning the Warning shortly after receiving it.  (Mattera Dep. at 100.)  In that meeting plaintiff argued that the allegations of poor performance were "unfounded and contrived."  (*Id*. at 101.)  Yudkoff and O'Neill directed plaintiff to respond to the Warning in writing.  (*Id*. at 103.)  At some point during that meeting O'Neill left and plaintiff was alone with Yudkoff.  (*Id*. at 101.) While alone with Yudkoff, plaintiff stated that he thought his performance was satisfactory and that "he did not understand what he needed to do to get better." (Yudkoff Dep. at 18.)  Plaintiff also said "[he] really fel[t] [he] was discriminated against and didn't state the reason."  (Mattera Dep. at 101.)  This was plaintiff's first mention, to anyone, of any discrimination.

---

[3] Again plaintiff offers generalized and inadmissible hearsay statements.  Plaintiff claims members of the marketing group staff told him that they were very pleased with his work, his performance, and the accuracy of his projections.  (Mattera Dep. at 92; Pl.'s 56.1 Statement ¶ 61.)  For the same reasons stated above, *see supra*, note 2, the Court declines to accept that statement as undisputed fact.

On August 11, 2006, plaintiff wrote a detailed report to Yudkoff, O'Neill, and Moran responding to the performance deficiencies highlighted in the Warning.  (Pl.'s 56.1 Statement ¶ 63: Blecher Decl. Ex. J.)  Therein plaintiff explained that he had not reached or was slow to reach the objectives in question because the marketing group was uncooperative and declined to provide the requested information and because it took several inquiries to get certain other information.  (Blecher Decl. Ex. J.)  As to the remainder of the Warning, plaintiff either failed to respond or responded in a manner not addressing the Warning's concerns.[4]  Plaintiff's response nowhere mentioned discrimination of any kind.  (*See Id.*)

After submitting the response, plaintiff had another meeting with O'Neill and Yudkoff.  (Pl.'s 56.1 Statement ¶ 83.)  The meeting focused on plaintiff's work performance, although plaintiff did tell both O'Neill and Yudkoff he felt "discriminated against."  (Mattera Dep. at 106-107.)  O'Neill and Yudkoff did not respond to that allegation but instead focused on plaintiff's performance issues.  (Mattera Dep. at 108.)

Later in August plaintiff began reaching out to Merrill Winter, an employee relations representative.  Until late September, however, plaintiff never spoke to Winter and was only able to trade voicemails with him.  (*Id*. at 118.)  On September 22 plaintiff wrote Winter an email stating that he would like to discuss his feeling that O'Neill had been discriminating against him.  (*Id*. at 119.)[5]  This was the first time plaintiff mentioned

---

[4] For example, the Warning states that plaintiff had made little progress upgrading certain computer or database skills, and that plaintiff had failed to undertake any training to help in that regard.  (Blecher Decl. Ex. H.)  Plaintiff responded that he uses the skills every month and that as far as he knows he hasn't missed a deadline for an assignment requiring him to use these skills.  (Blecher Decl. Ex. J.)  However, whether plaintiff's competency in the skills in questions needed improving and whether plaintiff used those skills at work are different concepts.

[5] The email, in its entirety, reads: "Hi Merrill, Unfortunately we have been missing each other [sic] telephone calls.  I would like to meet with you today to discuss my issues with my manager.  I feel that I

discrimination to Winter.  Finally, on September 25 plaintiff spoke to Winter on the

telephone and complained of O'Neill's discriminatory treatment.  (Pl.'s 56.1 Statement ¶

88.)  Winter advised plaintiff that he would "look into it."  (Mattera Dep. at 118.)

Sometime after plaintiff first attempted to call Winter, Winter informed Yudkoff

that plaintiff had contacted him.  (Yudkoff Dep. at 35; Winter Dep. at 28; Blecher Decl.

Ex. L.)[6]  Yudkoff assumed that plaintiff had contacted Winter to discuss the Warning and

provided Winter with plaintiff's performance evaluations.  (Yudkoff Dep. at 35-36;

Winter Dep. at 28.)  O'Neill testified that he did not find out that plaintiff had contacted

Winter until a week or two after plaintiff was terminated.  (O'Neill Dep. at 95.)


**F.  Termination**

Plaintiff was not fired when the Warning's restriction period expired on August

25.  (*Id*. at 88.)  O'Neill claims he wanted to give plaintiff more time to meet the

Warning's objectives.  (*Id*.)  Plaintiff, however, claims he was not fired because JPMC

needed to retain him to complete certain assignments.  (Mattera Dep. at 114.)

On September 19 O'Neill submitted his official recommendation that plaintiff be

terminated, citing plaintiff's failure to complete the objectives outlined in the Warning

and the 2006 Report.  (Blecher Decl. Ex. K.)  O'Neill made the decision after receiving

negative performance feedback from the marketing group staff and the head of Treasury

Services traning, and mixed reviews from the senior vice president in charge of HR, and

---

my [sic] manager is discriminating and had taken a retaliatory attitude towards me.  Please let me know
when you are available to discuss.  Thanks.  Jeff."  (Mushkin Decl. Ex. N.)
[6] The timing of this phone call is not clear and neither Yudkoff nor Winter's depositions states specifically
when it was.  Yudkoff says the conversation occurred "before Mr. Mattera was terminated."  (Yudkoff
Dep. at 35.)  Winter does not recall the date.  (Winter Dep. at 28.)

after consulting with Yudkoff (O'Neill Dep. at 96-97.)  The final decision to terminate

plaintiff, however, was O'Neill's alone.  (*Id*. at 98.)

On September 25, 2006, sometime between speaking with Winter on the

telephone and 11:53 a.m., plaintiff was called into O'Neill's office and terminated by

O'Neill and Yudkoff.  (Mattera Dep. at 118; Blecher Decl. Ex. L.)  Plaintiff's position

was filled by Wade Chocheles, a forty-nine-year-old man.  (O'Neill Dep. at 95-96;

Mushkin Decl. Ex. P.)  As noted, plaintiff believes he was terminated and replaced with

Chocheles because JPMC "wanted a younger-looking group in this bank."  (Mattera Dep.

at 122.)


## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is proper if the moving party shows that "there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In

deciding whether there is a genuine issue of material fact as to an element essential to a

party's case, the court must examine the evidence in the light most favorable to the party

opposing the motion, and resolve ambiguities and draw reasonable inferences against the

moving party." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (internal quotation

marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The

moving party must demonstrate that no genuine issue exists as to any material fact.

*Celotex* 477 U.S. at 323-25.  As to an issue on which the non-moving party bears the

burden of proof, "the burden on the moving party may be discharged by 'showing'—that

is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325 (rejecting a construction of Rule 56(c) that would require the party moving for summary judgment to produce evidence affirmatively establishing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof).

If the moving party makes such a showing, the "non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996); *Celotex*, 477 U.S. at 322-23.  In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 256-57; *Gross v. Nat'l Broad. Co.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002).  Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.  *See H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (stating that "hearsay testimony that would not be admissible if testified to at the trial may not properly be set forth in [a Rule 56] affidavit") (internal quotation marks and citation omitted).

The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case," especially "where . . . the merits turn on a dispute as to the employer's intent."  *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008).  "Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."  *Id.*

Indeed, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

## B. Age Discrimination

The ADEA provides in relevant part that "[i]t shall be unlawful for an employer to. . . discharge any individual or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Discriminations claims under the ADEA are analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010).[7] *See also D'Cunha v. Genovese/Eckerd Corporation*, 479 F.3d 193, 194 (2d Cir. 2007) (using the *McDonnell Douglas* framework in an ADEA case); *Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 114 (2d Cir. 2007) (same). Under *McDonnell Douglas*, plaintiff must first establish a prima facie case of discrimination. Plaintiff may do so by showing, "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of employment discrimination." *Gorzynski*, 596 F.3d at 107. Though not "onerous, . . . this burden is not inconsequential." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 127 (2d Cir. 2004) (internal citations omitted). If the plaintiff establishes a prima facie case, defendant bears the burden to "articulate

---

[7] Age discrimination claims brought under NYHRL are evaluated under the same standards that govern the ADEA. *Leibowitz v. Cornell University*, 584 F.3d 487, 498 n.1 (2d Cir. 2009); *Abdu-Brisson*, 239 F.3d at 466.

some legitimate, nondiscriminatory reason for the [adverse act]." *Leibowitz*, 584 F.3d at 499 (internal quotation marks omitted). Defendant's burden is "one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods.*, 520 U.S. 133, 142 (2000). Should defendant satisfy that requirement, the burden shifts to plaintiff, in opposing a motion for summary judgment, to demonstrate that a reasonable jury could find, "by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gorzynski*, 596 F.3d at 106 (internal quotation marks omitted); *Holowecki v. Federal Express Corp.*, 2010 WL 2573864, at *1 (2d Cir. June 24, 2010) ("In order to satisfy their burden at the final stage [of the *McDonnell Douglas* analysis], plaintiffs must offer evidence that age discrimination was the 'but-for' cause of the challenged actions.").[8]

### 1. Prima Facie Case

To make his prima facie case of age discrimination plaintiff must show that (1) he was in the protected group, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) the adverse employment action's circumstances give rise to an inference of discrimination. *Gorzynski*, 596 F.3d at 107. Defendants here do

---

[8] The Supreme Court recently clarified the standard for prevailing on an ADEA claim in *Gross v. FBL Financial Services*, 557 U.S. ____, 129 S. Ct. 2343 (2009). Prior to *Gross* the final question in the analysis, after defendant had articulated a legitimate nondiscriminatory reason, was "whether the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that her dismissal was motivated at least in part by age discrimination." *Tomassi*, 478 F.3d at 114. *Gross* modified the burden by holding that "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross*, 129 S.Ct. at 2351. The Second Circuit has clarified that the basic burden-shifting framework of *McDonnell Douglas* remains intact despite *Gross*'s modification. *Gorzynski*, 596 F.3d at 106 ("[W]e remain bound by, and indeed see no reason to jettison, the burden-shifting framework for ADEA cases that has been consistently employed in our Circuit."). *Gross* increases plaintiff's burden at the third stage of the *McDonnell Douglas* analysis to "raise[] sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her age was a 'but for' cause of [defendant's] decision to fire her." *Id.* at 107.

not contest that plaintiff meets the first and third elements (the ADEA protects people over forty years old, 29 U.S.C. § 631(a), and plaintiff was sixty-one year old when fired; and termination is an obvious form of adverse employment action.  *See*, *e.g.*, *Gorzynski*, 596 F.3d at 107; *Hrisinko v. New York City Dep't of Educ.*, 369 Fed. Appx. 232, 235 (2d Cir. 2010)).  Defendants do contest, however, that plaintiff was qualified for his position and that his firing gave rise to an inference of discrimination.

### a.  Qualified for the Position

Defendants claim plaintiff cannot establish that he was qualified for his position in JMPC's Treasury Services because he did not meet JMPC's criteria for the job. (Def.'s Mem. at 7.)  Defendants claim that "qualified," for the purposes of ADEA claims, requires that plaintiff prove he "met the defendant's criteria for the position."  *Williams*, 368 F.3d at 127.  In other words, plaintiff must show he satisfied JMPC's "honestly-held expectations."  *Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 30 (2d Cir. 1997).  *Williams*, however, presents a situation different from plaintiff's in this case.  In *Williams*, plaintiff conceded that she did not have the work experience defendant expressly required for the job in question.  368 F.3d at 125, 127.  In other words plaintiff, as a matter of indisputable fact, did not meet defendant's expressly-stated criteria.  In the case at bar what defendants ask the court to understand as "criteria" is an entirely different concept. Whereas in *Williams* there were set requirements to obtain a new job, in this case plaintiff had worked in his job for two years although he had received poor performance evaluations during that period.

The Court declines to adopt defendant's application of the qualification prong. The standard more often employed by the Second Circuit, and indeed the standard much more easily applied to the thin record on this motion for summary judgment is whether plaintiff possessed the "basic skills necessary for performance of [the] job." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (internal quotation marks omitted).  See also *Ruiz v. County of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010) ("the inquiry should focus on the plaintiff's competence and whether he possesses the basic skills necessary" (internal quotation marks omitted)); *DeMarco v. Stony Brook Clinical Practice Management Plan*, 348 Fed. Appx. 651, 653 (2d Cir. 2009) (finding summary judgment inappropriate when the court might find that plaintiff possessed the "basic skills necessary").  In other words, plaintiff's burden is not to show good performance or even average performance, but merely to show he "had the basic qualifications to fulfill his position." *Alam v. HSBC Bank USA*, 2009 WL 3096293, at *8 (S.D.N.Y. Sept. 28, 2009).  Indeed, it is "error to find that plaintiff has not established his *prima facie* case merely because employer was dissatisfied with plaintiff's performance." *Chukwurah v. Stop & Shop Supermarket Co., LLC*, 354 Fed. Appx. 492, 494-95 (2d Cir. 2009).  When the adverse action in question is the termination of a current employee with several years of experience, the qualification requirement is "not difficult" to meet. *Slattery*, 248 F.3d at 92 (an employee of seven years need only show "minimal qualification" for the job).  Plaintiff has met this minimal burden and satisfied this element of his prima facie case.

### b. Inference of Discrimination

Defendants claim plaintiff cannot prove that his termination raises an inference of discrimination because he proffers no evidence of outwardly discriminatory conduct and admits that no one made any comments or took any action towards him relating to age or suggesting age bias. (Def.'s Mem. at 8.)[9]  But where "an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available . . . affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Holcomb*, 521 F.3d at 137.  Indeed, it is precisely because courts are not provided direct and certain evidence of discrimination that the law calls for a finding of an "inference."

The Second Circuit has continuously held that an inference of discrimination arises, for purposes of ADEA defendants' summary judgment motions, when an older qualified employee is replaced by someone younger. *See*, *e.g.*, *D'Cunha*, 479 F.3d at 195 (an age difference of eight years raises an inference of discrimination); *Gorzynski*, 596 F.3d at 107; *Francis v. Elmsford Sch. Dist.*, 263 Fed. Appx. 175, 177 (2d Cir. 2008); *Woodman*, 411 F.3d at 79.[10]  Because Chocheles was 12 years younger than plaintiff

---

[9] Defendants also claim an inference of discrimination fails when, as in the case at bar, the allegedly discriminatory actors and the beneficiary of the adverse act are within the protected class. (Def.'s Mem. at 8.)  The Supreme Court and the Second Circuit have both unequivocally stated, however, that the non-plaintiff actors' ages in an ADEA case is not determinative; the question is whether the plaintiff suffered an adverse employment act "*because of his age*." *O'Conner v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). *See also D'Cunha*, 479 F.3d at 195; *Woodman*, 411 F.3d at 78.  Thus the Court rejects this argument.

[10] *Woodman* adds the extra requirement that defendant know of the age discrepancy in question when an inference of discrimination is based solely on plaintiff being terminated and replaced by a younger worker. 411 F.3d at 79.  Considering that defendants' New Hire Form contains a "date of birth" field, at least in its 1990 version, it seems highly unlikely that defendants would not know plaintiff's age [defendants did know Chocheles' age because the New Hired Form produced is from Chocheles' hiring in 1990].  (Mushkin Decl. Ex. P.)  In any event, defendants do not claim not to know plaintiff's age in their opposition papers. For the purposes of this motion, therefore, the Court takes this point as admitted.

18

when plaintiff was fired and replaced by Chocheles, plaintiff has sufficiently raised an inference of discrimination.

### 2.  Legitimate Nondiscriminatory Reason

Having satisfied his burden of proffering sufficient evidence to establish a prima facie case, the burden shifts to defendants to articulate a legitimate nondiscriminatory reason for plaintiff's termination.  *Gorzynski*, 596 F.3d at 106.  Defendants here claim plaintiff was terminated for his "failure to improve his performance."  (Def.'s Mem. at 9.) In support of that claim are the extremely well documented performance shortcomings highlighted in the 2005 and 2006 Reports and the Warning, along with O'Neill's claim of receiving negative feedback regarding plaintiff from several other employees.  *See supra*, §§ I.D, F.  Not only was O'Neill, plaintiff's supervisor, obviously and expressly dissatisfied with plaintiff's performance, but plaintiff was also informed by the Warning, and understood, that his future employment depended on his meeting specific objectives and improving his performance generally.  In writing his Recommendation for Termination, O'Neill stated as grounds plaintiff's failure to complete the Warning's objectives (which included improving performance is various areas).  (Blecher Decl. Ex. K.)  Clearly such performance shortcomings would constitute a legitimate nondiscriminatory reason for plaintiff's termination.  *See Slattery*, 248 F.3d at 93; *Gorzynski*, 596 F.3d at 107.  Thus defendants have satisfied their burden of articulation.

Plaintiff claims that defendants have not met their burden because "[p]laintiff received numerous promotions, salary increases, [and] annual bonuses ... [and] [a]s such, there exist genuine issues of material fact as to [d]efendants' legitimate

nondiscriminatory reason."  (Pl.'s Opp. at 9.)  Plaintiff's argument, however, misunderstands the law.  Defendants' burden at this stage is not to prove nondiscrimination.  Instead, defendants must "introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action."  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original).  Whether plaintiff can produce evidence casting doubt on defendants' proffered reasons, and what the character of that evidence is, is taken in to account only at the next stage of the analysis, namely whether defendants' reason is mere pretext for discrimination.  *Gorzynski*, 596 F.3d at 107.

### 3.  Pretext

Because defendants have articulated a legitimate, nondiscriminatory reason for plaintiff's termination, plaintiff can no longer rest on his prima facie case and must instead "raise[] sufficient evidence from which a reasonable jury could conclude by a preponderance of the evidence that [his] age was a 'but for' cause of [defendants'] decision to fire [him]."  *Gorzynski*, 596 F.3d at 107; *see also Sullivan v. Brodsky*, 2010 WL 2202977, at *1 (2d Cir. June 02, 2010) ("Proceeding to the final step of the analysis, plaintiff must adduce sufficient evidence to allow a rational fact finder to conclude that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor") (internal quotation marks omitted); *Holowecki*, 2010 WL 2573864, at *1 ("In order to satisfy their burden at the final stage, plaintiffs must offer evidence that age discrimination was the 'but-for' cause of the challenged actions");

*Alam*, 2009 WL 3096293, at *8 ("under the ADEA, the discrimination must have been a 'but-for' cause of the employer's decision") (internal quotation marks omitted).

Plaintiff proffers three arguments why he was terminated due to age discrimination:  First, that he suffered several instances of disparate treatment; second, that defendants' poor performance reviews were unwarranted considering his good performance in the past; and third, that his replacement was younger.  The evidence in the record, however, is insufficient to create a triable issue as to whether defendants' legitimate nondiscriminatory reasons were pretextual.  Plaintiff's list of highly generalized disparate treatment instances and the conclusory allegations drawn therefrom do not suffice to show discrimination.  Disagreements regarding poor performance evaluations and claims of prior good performance do not, as a matter of law or logic, mean that present poor performance reviews were unfounded.  And the mere fact that plaintiff's replacement was younger, though enough to establish the inference of discrimination prong of plaintiff's prima facie case, cannot standing alone establish pretext.

### a.  Disparate Treatment

Plaintiff's claimed instances of disparate treatment constitute a list of allegations that just as soon support defendants' reasons as undercut them.  Plaintiff states that defendants (1) told plaintiff he could not have conversations in the office while allowing other employees (who were apparently younger) to do so; (2) told other employees to not have conversations with plaintiff; (3) isolated plaintiff from other employees; (4) spoke in a condescending tone of voice to plaintiff; (5) required plaintiff to attend weekly one-on-

one meetings for a longer period than other employees; (6) maintained a regular log of plaintiff's work but not of other employees' work; (7) gave plaintiff clerical duties but did not give other employees such duties; (8) criticized plaintiff at staff meetings; and (9) allegedly silenced plaintiff by putting a hand in his face.  (Pl.'s Opp. at 10.)

These largely conclusory allegations are insufficient to prove pretext.  *See Valentine v. Standard & Poor's*, 50 F. Supp. 2d, 262, 284 (S.D.N.Y. 1999), *aff'd*, 205 F.3d 1327 (2d Cir. 2000).  Just because one is treated differently around the office, is granted different bonuses, or is terminated while others are retained does not, without more, demonstrate discrimination.  *See Ferrand v. Credit Lyonnais*, 2003 WL 22251313, at *8 (S.D.N.Y. Sept. 30, 2003), *aff'd*, 110 Fed. Appx. 160 (2d Cir. 2004).  Absent some evidence that other employees "similarly situated in all material respects" were treated differently, the mere fact that one employee suffered some non-facially-discriminatory disparate treatment cannot prove pretext.  *Id.*; *see also Ricks v. Conde Naste Publications, Inc.*, 6 Fed. Appx. 74, 78 (2d Cir. 2001) (plaintiff African-American woman's claims that Caucasian employees were not required to keep their logs in as detailed a format as she, and that she was subject to verbal attacks while other employees were not, were not enough to counter defendants' legitimate nondiscriminatory reason regarding performance absent evidence that those employees did not have plaintiff's documented performance issues); *Sklar v. New York Life Ins. Co.*, 34 Fed. Appx. 403, 405 (2d Cir. 2002) ("[having] not provided any evidence linking [plaintiff's supervisor's alleged lies about and assaults on him] to age discrimination . . . these alleged incidents are insufficient to survive a motion for summary judgment").  Plaintiff here provides no evidence that any other employees who were consistently cited for ongoing issues of poor

performance did not suffer the same treatment as that directed towards him.  Plaintiff believed that he faced the listed instances of disparate treatment in order to force him out and bring in a "younger-looking group."  (Mattera Dep. at 122.)  But that a "younger-looking group" would be created by hiring a new employee one year from fifty is questionable.  (See Mushkin Decl. Ex. P.)

More importantly, however, plaintiff's "feelings" and "beliefs" are no substitute for persuasive evidence that identifiable, valid comparators were treated in a meaningfully different manner. [11]  *See Holowecki v. Federal Exp. Corp.*, 644 F. Supp. 2d 338, 353 (S.D.N.Y. 2009), *aff'd*, 2010 WL 2573864 (2d Cir. June 24, 2010) ("[Plaintiff] does identify a handful of younger couriers who 'remained employed' at his station after his termination, but fails to demonstrate how any of these individuals were treated differently under circumstances similar to his.  Because [plaintiff] has offered nothing more than conclusory allegations in support of his age discrimination claim . . . his claim must be dismissed"); *Iverson v. Verizon Communications*, 2009 WL 3334796, at *5 (S.D.N.Y. Oct. 13, 2009) (plaintiff's "own conclusory statements are the only other evidence he provides to show that Verizon's proffered reasons were merely a pretext for discrimination.  As a matter of law, such statements are insufficient to establish pretext"); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (plaintiff may not establish even an inference of discrimination by offering "purely conclusory allegations of discrimination").  Indeed, obnoxious bosses and difficult times at work do not, as a

---

[11] Plaintiff provides no evidence comparing his overall circumstances to those of any other employee, and the Court cannot divine facts not in the record.  *See Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) ("Perhaps counsel for Appellant intends that we form an argument for him, by looking into the record to document the 'facts' posited in his 'statement of the case,' and then examining various combinations of these facts in the light of the legal doctrines he later mentions. But that is simply not our job, at least in a counseled case").

matter of law, constitute employment discrimination; "[w]hile plaintiff's tenure at [JMPC] was unpleasant, [he] has provided no evidence tending to show that [his age], rather than [his] incompetence, was the cause of [his] dismissal." *Dimps v. Human Resources Admin. of City of New York*, 2001 WL 1360235, at *8 (S.D.N.Y. November 5, 2001).

Finally, plaintiff's claim here comes nowhere near the documented disciplining of older employees for rightful conduct, while allowing younger employees off the hook for wrongful conduct that the Second Circuit has found sufficient to "raise[] a question for the jury." *Gorzynski*, 596 F.3d at 98-99, 108-109.[12]  Accepting all of plaintiff's generalized allegations as true, these facts neither undermine the credibility of defendants' reasons nor tend to prove that age discrimination played any part in O'Neill's decision to terminate him, much less was the but-for cause. *Byrnie v. Town of Cromwell Bd. Of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001).  Plaintiff's facts are entirely consistent with defendants' legitimate nondiscriminatory reasons.  The 2005 and 2006 Reports and the Warning indicate that as of the start of 2005 plaintiff's performance significantly deteriorated and that plaintiff was unable to correct his performance shortcomings. O'Neill responded by putting plaintiff under closer supervision and simplifying his tasks. Nothing other than plaintiff's belief that JPMC wanted a "younger-looking" group,

---

[12] Including allowing younger airport gate workers and technicians to consistently violate the smoking policy, sleep through arrivals of airplanes, take time off without reporting it, negligently open vibrating luggage, fraudulently alter postal service sheets, negligently destroy airport equipment, and last but certainly not least steal currency from passengers, all without being disciplined. *Gorzynski*, 596 F.3d at 98-99.  Plaintiff, on the other hand, was disciplined and eventually fired for suggesting, in an allegedly strong manner to an allegedly weak-willed supervisor, that defendant airline, her employer, repair broken fire extinguishers in anticipation of a known Federal Aviation Administration safety inspection. *Id.* at 99-100. Plaintiff claims in the base at bar, *e.g.* that he was not included in office banter regarding sports while other employees were, pale in comparison.

24

Mattera Dep. at 122, suggests that O'Neill was motivated by an unlawful animus.  *See*

*Slattery*, 248 F.3d at 94.


### b.  Poor Performance Reviews

Plaintiff's claim that his poor performance reviews were unfounded is equally

unavailing.  As a preliminary matter, "an employee's disagreement with her employer's

evaluation of her performance is insufficient to establish discriminatory intent."  *Ricks*, 6

Fed. Appx. at 78; *see also Valentine*, 50 F. Supp. 2d at 284 ("In any event, plaintiff's

subjective disagreement with his reviews is not a viable basis for a discrimination

claim"); *Iverson*, 2009 WL 3334796, at *5 ("Merely disagreeing with a supervisor's

assessment of work performance, however, is insufficient to raise a triable issue of fact

regarding pretext") (internal quotation marks omitted).  More importantly, an employee's

claim of evaluation fabrication fails when, as in the case at bar, the employee "signed

most of the reviews that document his performance as being substandard … [and] fail[ed]

to identify any evidence that refutes defendants' characterization of his performance."

*Chukwurah*, 354 Fed. Appx. at 495.

Plaintiff's undocumented claim that he had received good performance

evaluations in the past, Pl.'s 56.1 Statement ¶ 6, does not come close to the concrete

evidence necessary to give rise to a reasonable inference that poor performance

evaluations were suspect. *See Valentine*, 50 F. Supp. 2d at 284 ("[P]laintiff claims that his

harsh evaluations were inconsistent with his alleged proficiency in rating stocks and his

early success at S & P in the mid-1980s; . . . [his reviews,] however, dealt with his

sloppiness, lateness, inattentiveness, lack of creativity, poor writing, weak analysis,

impressions created outside the department and relationships with others, not his stock recommendations").  Whereas plaintiff's claim in *Valentine* pitted specifically indentified good performance against several items contributing to poor performance reviews, plaintiff here pits merely his *claim* to have received good reviews in the past against very specific and very well-documented performance failings in the present.  *See supra*, §§ I.A, D (listing several ways that plaintiff's performance was deficient and noting that plaintiff's bonus fell from $15,000 for 2004 to $10,000 for 2005).

Even if credited, plaintiff's claim of prior favorable performance does not, without more, prove his subsequent poor reviews were unwarranted.  Indeed, "[d]emonstration of past positive performance is insufficient to raise a genuine issue of disputed fact with respect to pretext."  *Iverson*, 2009 WL 3334796, at *5 (internal quotation marks omitted).  Plaintiff may have been promoted and received raises, bonuses, and positive reviews in the past.  But favorable performance in the positions plaintiff held before moving to Treasury Services is not inconsistent with the two poor performance reviews he received after moving to Treasury Services.  *Godfrey v. Ethan Allen, Inc.*, 113 F.3d 1229, 1997 WL 279933, at *2 (2d Cir. 1997) (unpublished table decision).  Even *post-termination* recognition of certain aspects of an employee's performance does not, by itself, cast doubt on an employer's decision to terminate an employee because his overall performance was deficient.  *See Emanuel v. Oliver, Wyman, & Co.*, 85 F. Supp. 2d 321, 331-32 (S.D.N.Y. 2000).  In sum, plaintiff's generalized contention that his undocumented prior good performance is insufficient to raise a triable issue of pretext.

### c. Replaced by a Younger Worker

Absent evidence of actual disparate treatment motivated by age discrimination, or non-subjective evidence that the poor performance evaluations were contrived, plaintiff's sole remaining fact in support of discrimination, namely that he was replaced by a younger worker, cannot defeat a motion for summary judgment. *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998) ("[A] jury cannot infer discrimination from thin air. And thin air is all the plaintiff has produced in the case before us. Norton proved (1) that he was over forty years old when he was fired; (2) that the person who fired him was under forty years of age; and (3) that one other person who was fired around the same time as Norton was also over forty. … [this] is simply not enough to support [a] jury's conclusion that he was fired because of his age."). Indeed, that plaintiff "was replaced by a younger employee … does not suffice to prove that the adverse employment action here was motivated by age discrimination. [Plaintiff] cannot defeat summary judgment merely by showing that he was replaced by [a younger employee]. Typically, younger workers will replace older ones; this is an unremarkable phenomenon that does not . . . prove discrimination." *Feldman v. Looms, Div. of Levcor Intern., Inc.*, 198 F.3d 233, 1999 WL 973518, at *2 (2d. Cir 1999) (unpublished table decision) (internal quotation marks and citations omitted).

Having reviewed the record as a whole, the Court concludes that no reasonable jury could find age discrimination to be a "but-for" cause of plaintiff's termination. Defendants' motion for summary judgment on plaintiff's discrimination claim is granted.

## C.  Retaliation

The ADEA provides in relevant part that "[i]t shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section."  29 U.S.C. § 623(d).

Retaliation claims under the ADEA are also analyzed using the McDonnell Douglas burden-shifting framework.  *Gorzynski*, 596 F.3d at 110.  To establish his prima facie case plaintiff must show that (1) he participated in protected activity known to defendant, (2) he suffered an adverse employment action, and (3) a "causal connection [exists] between [plaintiff's] engagement in the protected activity and the adverse employment action."  *Id.*; *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003); *Slattery*, 248 F.3d at 94.  Once established, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the termination.  *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).  The burden then "shifts back to the plaintiff to demonstrate pretext."  *Slattery*, 248 F.3d at 95.[13]

---

[13] The Supreme Court in *Gross* did not directly address whether "but-for" causation is required for ADEA retaliation claims.  *See* 129 S. Ct. at 2350-51.  Neither has the Second Circuit; after requiring "but-for" causation for discrimination claims that court said, "[t]he analysis for the remainder of the burden-shifting test for the retaliation claims is similar to that of [discrimination claims]."  *Gorzynski*, 596 F.3d at 111.

In *Gross*, Justice Thomas found that, as a matter of textual analysis, § 623(a)(1)'s "because of" requires plaintiff to "prove that age was the 'but-for' cause of the employer's adverse decision."  129 S. Ct. at 2350.  Also, since Congress amended both Title VII and the ADEA in 1991 and left the "because of" language in § 623(a)(1) unchanged, yet changed Title VII's antidiscrimination language to require only that age be a motivating factor, no similar lessening of the causal standard could be read in to the ADEA.  *Id.* at 2349.  Congress likewise did not amend the ADEA's antiretaliation provision, § 623(d), which employs the same causal phraseology as § 623(a)(1).  If the "because of" in § 623(a)(1) requires "but-for" causation in that subsection, then it seems likely that the similar antiretaliation language, "It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section," 29 U.S.C. § 623(d), requires "but-for" causation for § 623(d) claims.  *See* 5 Hon. Leonard B. Sand, et al., *Modern Federal Jury Instructions-Civil* Instr. 88-28 cmt. (2009) ("While the Court has not directly extended [the *Gross* holding that ADEA discrimination claims require proof of 'but-for' causation] to retaliation claims, its reasoning applies with equal force, in which case the plaintiff would have to show that the desire to retaliate was the but-for cause of the defendant's adverse action") (internal citation omitted).

Courts have come down on both sides on the issue.  *Compare Rasic v. City of Northlake*, 2009 WL 3150428, at *17 (N.D. Ill. Sept. 25, 2009) (stating that *Gross* requires "but-for" causation for ADEA

### 1.  Prima Facie Case

Defendants contest two elements of plaintiff's prima facie case: that plaintiff undertook known protected activity and that a causal connection existed between that activity and his termination.  (Def.'s Mem. at 10.)

### a.  Protected Activity

Whether plaintiff's conduct was protected activity under the ADEA requires satisfaction of three essential elements.  First, plaintiff must complain, in some form, about allegedly discriminatory practices.  *See*, *e.g.*, *Gorzynski*, 596 F.3d at 111 (plaintiff complaining to supervisors about disparate treatment specifically between older and younger employees); *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) (complaining of supervisor's sexually harassing behavior to employees charged with handling such claims); *Slattery*, 248 F.3d at 95 (filing an EEOC complaint before discharge); *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (complaining to corporate officer about and participating in internal investigation of harassment).  *But see Cruz v. New York State Deputy Atty. Gen for Medicaid Fraud*, 1995 WL 81279, at *1 (mere allegation of "protesting a discriminatory rating" not enough of a complaint for protected activity).  Second, though the complained-of conduct need not be discriminatory as a matter of law, plaintiff must have a good faith, reasonable belief that the practices

---

retaliation claims); *Beckford v. Geithner*, 661 F. Supp. 2d 17, 25 n.3 (D.D.C. 2009) (requiring "but-for" causation in a Title VII retaliation claim); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) (same for ADA retaliation claims); *Beckham v. National R.R. Passenger Corp.*, 2010 WL 3522216, at *11 (D.D.C. Sept. 9, 2010) (stating that in single motive disparate treatment cases, "but-for" causation is required for both discrimination and retaliation claims); *with Smith v. Xerox Corp.*, 602 F.3d 320, 328-29 (5th Cir. 2010) (declining to extend *Gross*'s "but-for" causation requirement to Title VII retaliation claims).  Because this Court concludes that plaintiff cannot establish a prima facie case for retaliation the Court need not reach the issue.

complained of were unlawfully discriminatory.  *Reed*, 95 F.3d at 1178; *Kessler v. Westchester County Dep't of Social Services*, 461 F.3d 199, 210 (2d Cir. 2006).  And third, plaintiff's complaints must be known to defendants, and specifically to O'Neill who alone made the termination decision.  *See Sengillo v. Valeo Elec. Systems, Inc.*, 328 Fed. Appx. 39, 41 (2d Cir. 2009); *Patane*, 508 F.3d at 115.  "[W]hether a particular activity is 'protected' is a question of law; whether the plaintiff engaged in that activity is a question for the jury."  5 Hon. Leonard B. Sand, et al., *Modern Federal Jury Instructions-Civil* cmt. 3-320 (2009).

On the record, plaintiff's complaints of discrimination included the following instances.  First, when speaking with Yudkoff directly after being issued the Warning, plaintiff "left it as I really feel discriminated against and didn't state the reason." (Mattera Dep. at 101.)  At plaintiff's next meeting with both O'Neill and Yudkoff present, after producing his written response to the Warning, plaintiff again said he felt discriminated against.  (*Id.* at 107-108.)  Finally, on September 22, three days after O'Neill's official recommendation that plaintiff be terminated, plaintiff sent an email to Winter saying that he felt "[O'Neill] is discriminating," (Blecher Decl. Ex. O.), and followed that up on September 25 with a call to Winter in which he discussed the discrimination.  (Pl.'s 56.1 Statement ¶ 88.)  These complaints of discrimination suffice to satisfy the complaint and the awareness prongs of the analysis of protected activity. Plaintiff mentioned that he felt discriminated against, albeit providing no bases or grounds for that contention.  And though the complaint was not made until after JPMC issued plaintiff the Warning, it was made and made known to O'Neill, before O'Neill made the final decision to terminate.  In other words, O'Neill, the person with sole

responsibility for making the termination decision, knew of plaintiff's complaints of discrimination before making that decision.[14]

However, merely complaining of discrimination and making that complaint known does not satisfy the protected activity element of a prima facie case of retaliation under the ADEA.  Plaintiff must also have had a good faith, reasonable belief that the complained-of conduct was unlawfully discriminatory.  *Galdieri-Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 292 (2d Cir. 1998); *Amin v. Akzo Nobel Chemicals, Inc.*, 282 Fed. Appx. 958, 961 (2d Cir. 2008); *Spadola v. New York City Transit Auth.*, 242 F. Supp. 2d 284, 291 (S.D.N.Y. 2003) ("employee must demonstrate . . . a good faith, reasonable belief that the underlying challenged actions of the employer violated the law").  For the belief to be reasonable, plaintiff must present at least some evidence of conduct, discrimination, animus, or bias existing *at the time he made the complaint* and pointing towards illegality.  *Spadola*, 242 F. Supp. 2d at 291 ("The employee's belief that he was opposing an employment practice made unlawful by Title VII must also be objectively reasonable, in the sense that the asserted opposition must be grounded on sufficient evidence that the employee was the subject of discrimination and harassment *at the time the protest to the offending conduct is registered*") (emphasis added).  Plaintiff's belief that complained-of conduct was illegal thus depends on plaintff's ability to point to facts at least indicative of illegal conduct.  *See*, *e.g.*, *Reed*, 95 F.3d at 1179 (plaintiff complained of a coworker's comment indicative of sexual

---

[14] That plaintiff made the complaints after JPMC issued the Warning does not help JPMC in proving that the decision to terminate plaintiff was made before, and therefore did not take in to account, his complaints. When the Warning's restriction period lapsed, plaintiff was not terminated.  O'Neill stated he did not terminate plaintiff then because he wanted to give plaintiff more opportunity to meet the Warning's objectives.  In other words, the Warning's lapse did not automatically lead to plaintiff's termination; other factors, including plaintiff's complaint, could have entered in to that decision.

harassment); *Patane*, 508 F.3d at 110 (same); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d

62, 80 (2d Cir. 2001) (same); *Slattery*, 248 F.3d at 89 (filing EEOC complaint alleging

age discrimination and citing statements referring to age and youth); *Gorzynski*, 596 F.3d

93 (complaining to supervisors about younger employees going undisciplined while older

employees faced discipline for similar conduct, and about general "unequal enforcement

of the rules . . . with respect to older employees versus younger employees"); *Kessler*,

461 F.3d at 210 (filing official complaint stating that non-class members were granted

promotions and other employment privileges while plaintiff was denied).

 Because the Court finds that plaintiff cannot establish the causal connection

element required to make out a prima facie case of retaliation, the Court need not and

does not find that plaintiff's belief that the complained-of conduct, at the times plaintiff

made his complaints, could not have been reasonable as a matter of law.  The Court

notes, however, that plaintiff's evidence suffices to allow a reasonable belief only to the

most minimal extent.  Plaintiff's case is distinguishable from the litany of cases cited

above in one key respect.  Plaintiff can point to no evidence of discrimination, animus, or

bias, or of conduct indicating the same, *at the time he complained of discrimination*.

Indeed, plaintiff's sole evidence raising an inference of discrimination is that JPMC

replaced him with an employee twelve years his junior.  (Pl.'s Opp. at 6-8.)  The record is

devoid of any other evidence pointing to discrimination.  *See supra*, §§ II.B.3.a-c.

However, all of plaintiff's complaints of discrimination were made *before* he was

terminated and replaced.  In other words, the inference of discrimination *had not yet*

*arisen* at the time plaintiff complained of discrimination.  Plaintiff's conclusory statement

that he "could not see any other reason [than age]," (Mattera Dep. at 78,) hardly suffices.

*See Blitzer v. Potter*, 2005 WL 1107064, at *13 (S.D.N.Y. May 06, 2005) ("[plaintiff]

has not shown any semblance of [age]-oriented motivation in the events or conversations.

Therefore, [plaintiff] has not participated in protected activity") (internal quotation marks

and citation omitted); *Bain v. Wal-Mart Stores, Inc.*, 585 F. Supp. 2d 449, 454

(W.D.N.Y. 2008) (because "description of 'vulgar' comments [supervisor] had

previously made fell short of describing a hostile work environment, [plaintiff's

complaint] did not, as a matter of law, constitute protected activity").


### b.  Causal Connection

Though plaintiff's belief that he faced discriminatory treatment may just pass

muster, he fails to establish a causal connection between his complaints and his

termination.  Defendants contend, correctly, that no causal connection may be inferred

because plaintiff's complaints occurred after the 2005 and 2006 Reports and the

Warning, that is well after the adverse developments leading to his termination began to

unfold.

Proof of causation does not necessarily require that the first act in the chain

leading to an employee's eventual termination occur after the employee's complaints of

discrimination.  "[C]ausation can be shown either: (1) indirectly, by showing that the

protected activity was followed closely by discriminatory treatment, or through other

circumstantial evidence such as disparate treatment of fellow employees who engaged in

similar conduct; or (2) directly, through evidence of retaliatory animus directed against

the plaintiff by the defendant."  *Gordon v. New York City Bd. Of Educ.*, 232 F.3d 111,

117 (2d Cir. 2001); *Ortiz-Moss v. New York City Dep't of Transp.*, 623 F. Supp. 2d 379,

397 (S.D.N.Y. 2008).  Indeed, it is well settled that an ADEA plaintiff "can indirectly

establish a causal connection to support a . . . retaliation claim by showing that the

protected activity was closely followed in time by the adverse employment action."

*Gorzynski*, 596 F.3d at 110 (*citing Gorman-Bakos v. Cornell Co-op Extension of*

*Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001)).  The Second Circuit has found

that four months is a sufficiently short period to establish temporal proximity.  *Gorzynski*,

596 F.3d at 111.

　　　At the same time, when "timing is the only basis for a claim of retaliation, and

gradual adverse job actions began well before the plaintiff had ever engaged in any

protected activity, an inference of retaliation does not arise."  *Slattery*, 248 F.3d at 95

(there finding that a lessening of plaintiff's job responsibilities due to deficient

performance five months prior to plaintiff's filing of an EEOC complaint precluded any

causal connection between plaintiff's complaint and his firing); *Deebs v. Alstom Transp.,*

*Inc.*, 346 Fed. Appx. 654, 658 (2d Cir. 2009) (prior nondiscriminatory adverse

employment actions based on poor performance prior to plaintiff's filing of an EEOC

complaint precluded causal connection despite temporal proximity); *Dixon v. Int'l*

*Federation of Accountants*, 2010 WL 1424007, at *6 (S.D.N.Y. Apr. 9, 2010) (repeated

critiques of plaintiff's management skills prior to plaintiff's complaints of discrimination

precluded causal connection despite temporal proximity); *Williams v. Time Warner Inc.*,

2010 WL 846970, at *6 (S.D.N.Y. Mar. 3, 2010) (lessening of plaintiff's work

responsibilities and exclusion of plaintiff from meetings and events prior to plaintiff's

complaints of discrimination precluded causal connection despite temporal proximity);

*Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 615 (S.D.N.Y. 2008) (complaints

regarding plaintiff prior to plaintiff's complaint of discrimination precluded causal connection despite temporal proximity).

Plaintiff here first complained of discrimination to Yudkoff in late June or July 2006.  He then complained of discrimination to both Yudkoff and O'Neill in August 2006.  Finally, he complained to Winter within days and on the day of his firing.  Even taking the late June date as the start of the temporal proximity clock, and therefore three months prior to the termination, plaintiff's complaints were within a four-month time period.  But plaintiff's non-refuted poor performance reports began in mid-2005, a full year before he first complained of discrimination and fifteen or so months before he was terminated.  Because plaintiff relies only on the temporal proximity between his complaints and his firing to establish a causal connection between the two, (Pl.'s Opp. at 13,) and because plaintiff's documented poor performance began significantly and sufficiently earlier, plaintiff cannot establish that any such causal connection existed.  *See Slattery*, 248 F.3d at 95 (deficient performance began just five months before plaintiff's complaint).  Because plaintiff cannot establish a causal connection, plaintiff cannot make out a prima facie case of unlawful retaliation, and therefore plaintiff's retaliation claim fails.  Defendants' motion for summary judgment on plaintiff's retaliation claim is granted

## III. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment **[20]** is

GRANTED.  The Clerk of the Court is directed to close this case.


SO ORDERED.

Dated: New York, New York
      September **30**, 2010

                                                     Richard J. Holwell
                                       United States District Judge

36